IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAMOUN & NORMAN, LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.3:25-cv-423 |
| | § | |
| GENERAL RADAR CORP., | § | |
| DMITRY TURBINER, JOHN DOE I, | § | |
| JOHN DOE II, | § | |
| | § | |
| Defendants. | § | |

---

PLAINTIFF'S MOTION TO REMAND

---

Pursuant to 28 U.S.C. sections 1446(b) and 1447(c), Plaintiff respectfully files this Motion

to Remand and, contemporaneously herewith, its Brief in Support thereof.

Respectfully submitted,,

**SHAMOUN & NORMAN, LLP**

By:     */s/ C. Gregory Norman*
        **C. Gregory Shamoun**
        State Bar No. 18089650
        Email: g@snlegal.com
        **Brian K. Norman**
        State Bar No. 00797161
        Email: bkn@snlegal.com
        **Michael L. Hood**
        State Bar No. 09943435
        Email: mhood@snlegal.com

1800 Valley View Lane, Suite 200
Farmers Branch, Texas 75234
Telephone: (214) 987-1745
Facsimile: (214) 521-9033

**ATTORNEYS FOR PLAINTIFF**
**SHAMOUN & NORMAN, LLP**

## CERTIFICATE OF SERVICE

I certify I served a true and correct copy of Plaintiff's Motion to Remand on the following counsel of record via the court's electronic filing system on March 19, 2025:

| | |
|---|---|
| Philip Robert Brinson | Sona J. Garcia |
| prbrinson@grsm.com | sjgarcia@gordonrees.com |
| GORDON REESE SCULLY | GORDON REESE SCULLY MANSUKHANI LLP |
|   MANSUKHANI LLP | 2200 Ross Avenue, Suite 3700 |
| TransWestern Tower | Dallas, Texas 75201 |
| 1900 West Loop South, Suite 1000 | |
| Houston, Texas 77027 | |

*/s/ Michael L. Hood*
Michael L. Hood

3IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAMOUN & NORMAN, LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.3:25-cv-423 |
| | § | |
| GENERAL RADAR CORP., | § | |
| DMITRY TURBINER, JOHN DOE I, and | § | |
| JOHN DOE II, | § | |
| | § | |
| Defendants. | § | |

---

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND

---

Table of Contents

I. Summary of the Argument ....................................................................................................... 3

II. Relevant Factual Background ................................................................................................. 4

III. Argument & Authorities ....................................................................................................... 6

    A.    Controlling Federal Precedent Limits this Court's Jurisdiction, and Places a Heavy Burden on Defendants to Support Their Claim SN Improperly Joined Turbiner to Defeat Diversity Jurisdiction. ................................................................................................................. 6

        **1.**    The Removal Statute Mandates a 30-Day Deadline Within Which A Notice of Removal Must Be Filed............................................................................................................................. 7

        **2.**    Controlling Precedent Places a Heavy Burden on Defendants to Support Their Claim SN Improperly Joined Turbiner to Defeat Diversity Jurisdiction.......................................... 7

    B.    Controlling Federal Precedent Makes Plain that General Radar's Untimely Removal Notice Is Fatally Defective on Procedural Grounds Alone. ....................................................... 9

    C.    General Radar Did Not—and Cannot—Meet Its Burden to Demonstrate SN Improperly Asserted Fraud Claims Against Turbiner Solely to Defeat Diversity Jurisdiction..................... 9

        **1.**    SN's Common Law Fraud Claim Against Turbiner Is More than Sufficient to Withstand a Rule 12(b)(6)-Type Analysis............................................................................... 10

        **2.**    SN's TUFTA Claims Against Turbiner Are More than Sufficient to Withstand a Rule 12(b)(6)-Type Analysis................................................................................................... 12

    D.    Request for Attorneys' Fees....................................................................................... 13

IV. Conclusion & Prayer............................................................................................................ 14

**Table of Authorities**

Cases

*Arthur Digital Assets, Inc. v. Lumerritt Res. LLC*, No. 4:23CV-01500, 2023 WL 918037 (S.D. Tex. Aug. 1, 2023) .................................................................................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) .................................................................. 8

*Burnett v. Grattan*, 468 U.S. 42 (1984) ...................................................................................... 11

*Burnett v. Sharp*, 328 S.W.3d 594 (Tex. App.—Houston [14th Dist.] 2010, no pet.)................. 11

*Hazelton v. Union Pac. R.R. Co.*, 497 F. Supp. 2d 800 (W.D. La. 2007)............................... 3, 7, 8

*Int'l Bus. Machs. Corp. v. Lufkin Indus.*, 573 S.W.3d 224, 228 (Tex. 2019)10*Kerr   v.   Holland Am.-Line Westours, Inc.*, 794 F. Supp. 207 (E.D. Mich. 1992) ..................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) .................................... 3, 6

*Siegel v. BWAY Corp.*, No. CV H-24-0411, 2024 WL 1639916 (S.D. Tex. Apr. 12, 2024)...... 3, 6

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 468 (5th Cir. 2004) ............................................. 3, 8, 9

*Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290 (5th Cir. 2000).................................................. 14

Statutes

28 U.S.C. § 1446(b) ..................................................................................................................... 9

28 U.S.C. § 1447(c) ..................................................................................................................... 13

FED. R. CIV. P. 8(e) ...................................................................................................................... 11

Pursuant to 28 U.S.C. sections 1446(b) and 1447(c), Plaintiff Shamoun & Norman, LLP

(SN) files this Brief in Support of it Motion to Remand, respectfully showing as follows:

## I.
### SUMMARY OF THE ARGUMENT

1.      Federal courts are courts of limited jurisdiction, having only that authority granted

to them by the Constitution and Congress.[1]  To that end, it is to be presumed that a case lies outside

this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting

jurisdiction exists.[2]  The practical effect of this presumption is that, in improper removal cases like

this one, federal district courts assessing their diversity jurisdiction must construe the removal and

remand statutes strictly against removal and strongly in favor of remand.[3]

2.      In so doing, federal courts must therefore test a removing defendants' notice of

removal to ensure it both: (1) demonstrates its compliance with 28 U.S.C. section 1446(b)'s

mandatory 30-day removal deadline, and (2) proves the plaintiff(s) joined a non-diverse defendant

for the <u>sole</u> purpose of defeating the court's diversity jurisdiction over a plaintiff's lawsuit against

the removing defendant.

3.      Applying the foregoing standards to this case, it is clear: (1) General Radar Corp.

(General Radar) cannot carry its threshold procedural burden to prove it timely removed this case

from the 168th District Court in Dallas County, Texas, within section 1446(b)'s mandatory 30-day

removal deadline, and (2) General Radar did not—because it cannot—satisfy its heavy substantive

---

[1] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[2] *Id.*; *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) ("The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper.").

[3] *See Hazelton v. Union Pac. R.R. Co.*, 497 F. Supp. 2d 800, 802 (W.D. La. 2007) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)).  "Because 'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.'"  *Siegel v. BWAY Corp.*, No. CV H-24-0411, 2024 WL 1639916, at *4 (S.D. Tex. Apr. 12, 2024) (quoting *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).  "The removal statute therefore is strictly construed, with 'any doubt about the propriety of removal [being] resolved in favor of remand.'" *Id.* (quoting *Siegel*, 491 F.3d at 281-82) (alteration in orig.).

burden of proving SN improperly joined Dmitry Turbiner (Turbiner) solely as a sham defendant

to defeat this Court's diversity jurisdiction over SN's state-law claims against General Radar.

4.      Thus, failing independently on both federal procedural grounds and Texas state-law substantive grounds, General Radar's Notice of Removal (Removal Notice) is wholly insufficient to support General Radar's and Turbiner's (collectively, Defendants or GenRad) efforts to wrest this state-court case from the 168th District Court.

5.      Accordingly, remand to the 168th District Court is not only appropriate, it is mandated by the Removal Statute and controlling federal precedent.

## II.
### RELEVANT FACTUAL BACKGROUND

6.      This case's genesis arises from a July 18, 2023, professional legal services contract relating to General Radar's general business operations and interests (the Engagement Contract or Agreement).  [Dkt. No. 1-5 at 3 ¶ 11]

7.      Before entering into that Agreement, SN had numerous conversations with Turbiner, General Radar's CEO.  [*See* Dkt. No. 1-5 at 3 ¶ 2; *see also id.* No. 1-3 at 1 ¶ 2]  During those discussions, and thereafter, Turbiner repeatedly assured SN that, among other things:

  a.      General Radar then-presently held funds sufficient to compensate SN for any contracted-for professional legal services SN agreed to provide General Radar pursuant to the Agreement;

  b.      General Radar was on the cusp of a significant stock offering that would ensure General Radar's continued-ability to compensate SN for the contracted-for professional legal services SN agreed to provide  pursuant to the Agreement;

  c.      General Radar was nearly done with the due diligence memorandum it needed to secure the success of its then-impending stock offering; and

  d.      General Radar's Series B offering would be complete sometime in October 2023.

[Dkt. No. 1-5 at 3 ¶ 12]

8.      Unbeknownst to SN, however, Turbiner's representations were all lies.  [Dkt. No. 1-5 at 3 ¶ 13]  Indeed, as SN found out only after it was too late to protect itself, GenRad's central purpose in entering into the Engagement Contract was to secure introductions to SN's high-net-worth clients with the hope of inducing them to invest in General Radar, which was severely cash strapped and on the brink of insolvency (if it was not already there).  [Dkt. No. 1-5 at 7 ¶ 34]  GenRad also hoped to use those clients' investments to pay for SN's legal service, which GenRad otherwise could not afford.  [Dkt. No. 1-5 at 3 ¶ 13].

9.      By the end of April 2024, unable to dupe SN's clients to invest in General Radar, GenRad could no longer keep up its solvency façade, and it defaulted on its payment obligations to SN.  [Dkt. No. 1-5 at 3-4 ¶¶ 14-16]  At that time, GenRad owed SN more than one-quarter-of-a-million dollars.  [Dkt. No. 1-5 at 4 ¶ 16]

10.     Subsequently, in early May 2024, Turbiner promised SN that GenRad could and would begin making $26,000 payments on the first of each month, starting on July 1, 2024 (the May Agreement).  [Dkt. No. 1-5 at 4 ¶ 16]

11.     As with the Engagement Contract, however, GenRad wholly failed to comply with their payment promises under the May Agreement.  [*See generally* Dkt. No. 1-5 at 4-5 ¶¶ 18-21]

12.     On December 27, 2024, owing to GenRad's failure to comply with the Engagement Contract and the May Agreement, SN filed suit against GenRad in the 68th District Court of Dallas County, Texas, under Cause No. DC-24-22337.  [Dkt. No. 1-5]

13.     On January 16, 2025, Plaintiff effectuated service on Defendants by delivering to them copies of Plaintiff's Original Petition and the Citation issued by the court clerk.  [Dkt. No. 1 at 3 ¶ 8]

14.     Thirty five days later, on February 20, 2025, General Radar filed its untimely

Notice of Removal (Removal Notice).[4]  [Dkt. No. 1 at 1]

15.     This Remand Motion now follows.

### III.
#### ARGUMENT & AUTHORITIES

16.     General Radar's Notice of Removal is procedurally and substantively defective

because: (i) General Radar removed this case from the Dallas County District Court more than 30

days after SN served Defendants with its Original Petition and Citation; and (ii) Turbiner, a Texas

citizen, is a properly joined defendant in SN's state-court lawsuit against GenRad.

**A.      Controlling Federal Precedent Limits this Court's Jurisdiction, and Places a Heavy
Burden on Defendants to Support Their Claim SN Improperly Joined Turbiner to
Defeat Diversity Jurisdiction.**

17.     It is well established that federal courts are courts of limited jurisdiction, having

only that authority granted to them by the Constitution and Congress.  *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "Because 'the effect of removal is to deprive the state

court of an action properly before it, removal raises significant federalism concerns.'"  *Siegel v.*

*BWAY Corp.*, No. CV H-24-0411, 2024 WL 1639916, at *4 (S.D. Tex. Apr. 12, 2024) (quoting

*Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007)). For this reason, it

is to be presumed that a case lies outside a federal court's limited jurisdiction, and the burden of

establishing the contrary rests on the party asserting that such jurisdiction exists.  *Id.*

18.     The practical effect of this presumption is that, in removal cases like this one,

federal district courts determining their diversity jurisdiction must construe the removal and

---

[4] Defendants filed their Original Answer (Answer) on February 7, 2025, in which they generally denied any
wrongdoing.  [Dkt. No. 1-5 at 20-22]  Defendants filed a First Amended Answer and Verified Denial (Amended
Answer) on February 19, 2025.  General Radar did not include GenRad's Amended Answer with its Removal Notice.
[*See* Dkt. No. 1-7, Ex. E ("List of Documents Filed")]

remand statutes strictly against removal and strongly in favor of remand. *See Hazelton v. Union Pac. R.R. Co.*, 497 F. Supp. 2d 800, 802 (W.D. La. 2007) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)).

> **1.    The Removal Statute Mandates a 30-Day Deadline Within Which A Notice of Removal Must Be Filed.**

19.    28 U.S.C. section 1446 (the Removal Statute) expressly provides "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).

20.    Though not jurisdictional, this 30-day removal requirement is mandatory and must be strictly applied. *See, e.g.*, *Kerr v. Holland Am.-Line Westours, Inc.*, 794 F. Supp. 207, 210 (E.D. Mich. 1992) ("Section 1446's time requirement for timely filing a notice of removal is not jurisdictional, but it is mandatory and must be strictly applied.") (quoting *Shadley v. Miller*, 733 F. Supp. 54, 55 (E.D. Mich.1990) & citing *Pillin's Place, Inc. v. Bank One, Akron, N.A.*, 771 F. Supp. 205, 206 (N.D. Ohio 1991); *N. Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 273 (7th Cir.1982)).

21.    "Under 28 U.S.C. § 1447(c), a district court is mandated to remand a case if, at any time before final judgment, it appears the court lacks subject matter jurisdiction.  Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists." *Hazelton*, 497 F. Supp.2d at 802 (citing *De Aguilar*, 47 F.3d at 1408; *Webb ex rel. Groth v. City of Leland, Miss.*, 2004 WL 3092767, at *1 (N.D. Miss. 2004)).

> **2.    Controlling Precedent Places a Heavy Burden on Defendants to Support Their Claim SN Improperly Joined Turbiner to Defeat Diversity Jurisdiction.**

22.    "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one, and unless it is clear that the non-diverse defendants have been fraudulently

joined, the case should be remanded to the state court from which it was removed." *Hazelton*, 497

F. Supp. 2d at 802 (citing *McKee v. Kan. City S R.R. Co.*, 358 F.3d 329, 337 (5th Cir. 2004); *B.,*

*Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). "In evaluating fraudulent joinder

claims, [courts] … must initially resolve all disputed questions of fact and all ambiguities in the

controlling state law in favor of the non-removing party. [Courts] … are then to determine whether

that party has any possibility of recovery against the party whose joinder is questioned." *Id.*

(alteration in orig.) (citing *Burden v. Gen. Dynamics*, 60 F.3d 213, 216 (5th Cir. 1995); *Dodson v.*

*Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)).

23.     In answering the fraudulent joinder question, federal courts typically conduct a

"Rule 12(b)(6)-type" analysis, looking at the allegations of the petition to determine whether it

states a claim against the in-state defendant. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 468, 573

(5th Cir. 2004). ("Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no

improper joinder."). Improper joinder can be proven by demonstrating either (1) actual fraud in

the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action

against the non-diverse party in state court.[5] *Id.*

24.     Under Rule 12(b)(6), "a well-pleaded complaint may proceed even if it strikes a

savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote

and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

25.     "The test for improper joinder based on this method is

whether the defendant has demonstrated that there is no possibility of recovery by
the plaintiff against an in-state defendant, which stated differently means that there

---

[5] Here, General Radar does not allege SN fraudulently pleaded jurisdictional facts. [*See generally* Dkt. No. 1] Rather, General Radar alleges SN fraudulently joined Turbiner to defeat this Court's diversity jurisdiction over SN's claims against General Radar. [Dkt. No. 1 at 4 ¶ 13 (Turbiner "has been fraudulently joined in this lawsuit for the sole purpose of defeat diversity, as none of the claims Plaintiff raises against him could survive a Rule 12(b)(6) analysis.")]

is no reasonable basis for the district court to predict that the plaintiff might be able
to recover against an in-state defendant."

*Smallwood*, 385 F.3d at 573.

**B.      Controlling Federal Precedent Makes Plain that General Radar's Untimely Removal
Notice Is Fatally Defective on Procedural Grounds Alone.**

26.      Federal removal law is clear and unequivocal:  A defendant's "notice of removal

of a civil action or proceeding <u>shall</u> be filed within 30 days after the receipt by the defendant,

through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon

which such an action or proceeding is based[.]"  28 U.S.C. § 1446(b) (emphasis added).

27.      Here, GenRad readily admits "Plaintiff served its Original Petition, along with

Citation, on Defendants in the state-court action on January 16, 2025."  [Dkt. No. 1 at 3 ¶ 8]

General Radar, however, did not file it Removal Notice until <u>35</u> days later, on February 20, 2025.[6]

[*See generally* Dkt. No. 1]

28.      On this basis alone, therefore, General Radar's removal of SN's state-court lawsuit

was untimely and improper.  Accordingly, without more, the Court should remand the case back

to the 68th District Court in Dallas County, Texas.

**C.      General Radar Did Not—and Cannot—Meet Its Burden to Demonstrate SN
Improperly Asserted Fraud Claims Against Turbiner Solely to Defeat Diversity
Jurisdiction.**

29.      In its Removal Notice, General Radar readily concedes Turbiner is a diversity-

defeating defendant.  [Dkt. No. 1 at 4 ¶ 13].  General Radar posits, however, this Court nonetheless

has diversity jurisdiction over SN's state-court claims because Turbiner "has been fraudulently

joined in this lawsuit for the sole purpose to defeat diversity[.]"  [Dkt. No. 1 at 4 ¶ 13]  That is so,

---

[6] General Radar does not contend (or otherwise establish) its 35-day delay in removing this case from state
court to this Court was somehow legally justified or excused.  Rather, General Radar inexplicably asserts it "remov[ed]
the state-court action within thirty days of [being] serv[ed].  Thus, removal is timely under 28 U.S.C. § 1446(b)."
[Dkt. No. 1 at 3 ¶ 8]

General Radar contends, because "none of [SN's fraud] claims … against [Turbiner] could survive a Rule 12(b)(6) analysis." [Dkt. No. 1 at 4 ¶ 13]

30.     General Radar is wrong.

***1.     SN's Common Law Fraud Claim Against Turbiner Is More than Sufficient to Withstand a Rule 12(b)(6)-Type Analysis.***

31.     Texas law is well settled.  To plead a viable common law fraud claim against Turbiner, SN's Original Petition need only allege facts sufficient to establish Turbiner made a material misrepresentation that he knew was false and intended SN to rely upon, which it did to its detriment.[7] *See, e.g.*, *Int'l Bus. Machs. Corp. v. Lufkin Indus.*, 573 S.W.3d 224, 228 (Tex. 2019).

32.     In its Removal Notice, General Radar intimates SN's common law "fraud claim is deficient … on its face" because SN "does not claim that, at the time Turbiner made the [mis]representations" about GenRad's ability and willingness to pay SN for its professional legal services, Turbiner knew his misrepresentation were false.[8] [Dkt. No. 1 at 4 ¶ 15]

33.     Even the most cursory review of SN's Original Petition, however, belies General Radar's contention that SN's Original Petition "does not claim that, at the time Turbiner made the [subject] representations, GenRad was not capable of paying, intended not to pay, or promised to pay from a specific source that it did not intend to use."[9] [Dkt. No. 1 at 4 ¶ 15].

---

[7]  In lieu of establishing Turbiner knowingly made a false representation, Texas law also permits SN to aver Turbiner made the subject misrepresentations recklessly, as positive assertions of fact, without knowledge of their truthfulness. *See, e.g.*, *Int'l Bus. Machs. Corp. v. Lufkin Indus.*, 573 S.W.3d 224, 228 (Tex. 2019).

[8]  General Radar identifies 6 elements of a Texas common law fraud claim. [*See* Dkt. No. 1 at 4 ¶ 14] Of those 6 elements, General Radar asserts SN's Original Petition fails to plead only one element, to-wit: "the second pleading element [that] requires the alleged misrepresentations [to] be false when made." [Dkt. No. 1 at 4 ¶ 15] Accordingly, SN likewise limits its response to General Radar's attack on SN's fraud allegations to that same element.

[9]  General Radar's contention that SN's Original Petition omits certain factual allegations is spurious.  As General Radar's own authority recognizes, "specific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what … the claim is and the grounds upon which it rests." *Arthur Digital Assets, Inc. v.*

34.     Indeed, in support of its common law fraud claim against Turbiner, SN expressly

and unequivocally pleads, among other facts: (i) "Turbiner made [certain mis]representations to

induce services to be rendered for the sole purpose of introductions to [SN]'s clients."; (ii)

"Turbiner had no intention of causing GenRad to pay its account" with SN; and (iii) GenRad's

ability to pay SN depended on its ability to secure equity investments from SN's high-net-worth

clients.  [Dkt. No. 1-5 at 3 ¶¶ 13-14]

35.     SN's Original Petition further alleges Turbiner knowingly made false

representations that:

> a.     GenRad had funds sufficient to pay for the services SN provided;
>
> b.     GenRad was ready to complete a Series B offering that would generate
>        sufficient proceeds to pay for the services SN rendered;
>
> c.     GenRad was preparing the due diligence memorandum that was necessary
>        to raise additional funds; and
>
> d.     General Radar's Series B offering would be complete "over the weekend"
>        as stated by Turbiner during October of 2023.

[Dkt. No. 1 at 3 ¶ 12]

36.     The foregoing pleaded facts, construed liberally, as true,[10] and in SN's favor—as

required by both the federal and Texas rules of civil procedure's notice-pleading standards[11]—

leave no doubt that SN pleaded enough facts to raise a reasonable expectation that discovery will

---

*Lumerritt Res. LLC*, No. 4:23CV-01500, 2023 WL 918037, at *2 (S.D. Tex. Aug. 1, 2023) (alteration in original)
(internal quotations omitted).

[10]  Importantly, for purposes of Turbiner's diversity-defeating joinder as a defendant in this case, General
Radar does not directly (or, indirectly, for that matter) dispute the veracity of SN's factual allegations against Turbiner.
[*See generally* Dkt. No. 1 at 4-5 ¶¶ 14-15]

[11]  *See* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."); *Burnett v. Grattan*, 468 U.S.
42, 51 n.13 (1984) ("the pleading and amendment of pleadings rules in federal court are to be liberally construed");
*Burnett v. Sharp*, 328 S.W.3d 594, 598 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("In determining the nature
of claims in a petition to which the trial court sustained no special exceptions, this court must construe the pleading
liberally in the pleader's favor and construe the petition to include all claims that reasonably may be inferred from the
language used in the petition, even if the petition does not state all the elements of the claim in question.").

reveal evidence of the second element of SN's common law fraud claim against Turbiner. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

37.     Accordingly, under any fair reading, SN's pleadings are more than sufficient to pass muster under any Rule 12(b)(6) analysis vis-à-vis the second element of SN's common law fraud claim against Turbiner. *See* discussion *supra* n.8.

### 2.     SN's TUFTA Claims Against Turbiner Are More than Sufficient to Withstand a Rule 12(b)(6)-Type Analysis.

38.     In its Removal Notice, General Radar obliquely references Texas Uniform Fraudulent Transfer Act section 24.005(a)(1) and (a)(2) in two section headings. [Dkt. No. 1 at 5 §§ III.B.2 ("Violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA[")) §§ 24.005(A)(1)" [sic]), III.B.3 ("Violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA["] § 24.005(a)(2), § 24.006(a)")]

39.     Neither the two paragraphs under section heading III.B.2, nor the lone paragraph under section III.B.3, cite TUFTA's statutory text. [*See generally* Dkt. No. 1 at 5-6 ¶¶ 16-18] Instead, General Radar generally references a few cases in alleged support of what General Radar seemingly contends an ordinary TUFTA plaintiff should plead in its lawsuit, to-wit: "who the transfers were made to" and "when the alleged fraudulent transfer occurred[.]"[12] [Dkt. No. 1 at 5-6 ¶¶ 17-18] SN's Original Petition, however, does that (and more).

40.     Indeed, as previously stated, SN expressly pleads in its Original Petition:

---

[12] In section III.B.3, GenRad refers the Court to *In re Giant Gray, Inc.*, 629 B.R. 814, 853 (Bankr. S.D. Tex. 2020) with the following explanatory parenthetical: "(requiring a Section 24.005(a)(2)(A) claims [sic] to provide 'the who, what, when, where, how, and why of the alleged fraud"). [Dkt. No. 1 at 6 ¶ 18] To the extent GenRad's Removal Notice actually calls into question SN's TUFTA claims, GenRad specifically limits their challenge of SN's factual pleadings to the supposed "who" and "when" "requirements" of a section 24.005(a)(2)(A) claim. Accordingly, this Remand Motion does the same.

Turbiner [mis]represented at various points in time prior to executing the Engagement [Contract] and during the course of the engagement that:

a.    GenRad had funds sufficient to pay for the services Plaintiff provided;

b.    GenRad was ready to complete a Series B offering that would generate sufficient proceeds to pay for services rendered;

c.    The Series B offering would complete "over the weekend" as stated by Turbiner during October 2023; and

d.    The due diligence memorandum being prepared was necessary to raise additional funds.

[Dkt. No. 1-5 at 3 ¶ 12]

41.    And, under the heading of its section 24.005(a)(1) claim, SN further pleads:

At the time Plaintiff became a creditor of GenRad, GenRad, according to the misrepresentations of Turbiner, was a solvent business with sufficient assets to pay its creditors and obligations. In fact, GenRad was always cash-strapped and Turbiner created a program of fraud to mask its precarious position. Its fraudulent transfers ultimately rendered it insolvent.

[Dkt. No. 1-5 at 7 ¶ 34.

42.    Tellingly, General Radar completely ignores these factual allegations. [*See generally* Dkt. No. 1 at 5-6 ¶¶ 17-18] It is not surprising, therefore, that General Radar makes no effort to assess the adequacy of SN's pleadings vis-à-vis its TUFTA claims against GenRad. Having failed to do so, it is axiomatic that General Radar's Removal Notice is insufficient to carry General Radar's heavy burden to establish this Court's diversity jurisdiction over SN's state-court lawsuit.

43.    Accordingly, on this ground, too, the Court should grant SN's Remand Motion.

**D.    Request for Attorneys' Fees**

44.    The remand statute provides, in relevant part: "[a]n order remanding the case may require payment of just costs and actual expenses, including attorney [sic] fees, incurred as a result of this removal." 28 U.S.C. § 1447(c). Fifth Circuit precedent construing section 1447(c) explains:

> The application of § 1447(c) requires consideration of the propriety of the removing party's actions based on an objective view of the legal and factual elements in each particular case. We evaluate the objective merits of removal at the time of removal, irrespective of the facts that it might ultimately be determined that removal was improper.

*Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).  Stated another way, "the question [for the court to consider] in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.*

45.     Here, General Radar removed this case from the 168th District Court 35 days after being served with Plaintiff's Original Petition and Citation.  [Dkt. No. 1 at 3 ¶ 8]  Objectively, therefore, General Radar knew, or should have known, the mandatory deadline within which to file its Removal Notice had long expired and removal was therefore statutorily barred.  But General Radar instead affirmatively represented to this Court that it "remov[ed] the state-court case within thirty days of [being] serv[ed].  Thus, removal is timely under 28 U.S.C. § 1446(b)."  [Dkt. No. 1 at 3 ¶ 8]

46.     Under such circumstances, the Court should conclude: (1) General Radar's removal was patently improper and unreasonable, and (2) SN is entitled to recover its just costs and actual expenses, including attorneys' fees.

## IV.
### CONCLUSION & PRAYER

For the foregoing reasons, SN respectfully requests the Court to find: (1) General Radar's untimely Notice of Removal is fatal to this Court's exercise of diversity jurisdiction over SN's state-court lawsuit against Defendants, and (ii) General Radar otherwise failed to satisfy its heavy burden to demonstrate this Court's diversity jurisdiction over SN's state-law claims against Defendants.

SN also respectfully requests the Court: (i) grant SN's Remand Motion, (ii) award SN its reasonable just costs and actual expenses, including attorneys' fees, in defending against General Radar's frivolous Removal Notice, and (iii) remand this case to the 168th District Court, Dallas County, Texas.

SN further respectfully requests all other relief to which it is entitled.

Respectfully submitted,

**SHAMOUN & NORMAN, LLP**

By: */s/ C. Gregory Norman*
   **C. Gregory Shamoun**
   State Bar No. 18089650
   Email: g@snlegal.com
   **Brian K. Norman**
   State Bar No. 00797161
   Email: bkn@snlegal.com
   **Michael L. Hood**
   State Bar No. 09943435
   Email: mhood@snlegal.com

1800 Valley View Lane, Suite 200
Farmers Branch, Texas 75234
Telephone: (214) 987-1745
Facsimile: (214) 521-9033

**ATTORNEYS FOR PLAINTIFF**
**SHAMOUN & NORMAN, LLP**

## <u>CERTIFICATE OF SERVICE</u>

I certify I served a true and correct copy of Plaintiff's Motion to Remand on the following counsel of record via the court's electronic filing system on March 19, 2025:

Philip Robert Brinson
prbrinson@grsm.com
GORDON REESE SCULLY MANSUKHANI LLP
TransWestern Tower
1900 West Loop South, Suite 1000
Houston, Texas 77027

Sona J. Garcia
sjgarcia@gordonrees.com
GORDON REESE SCULLY MANSUKHANI LLP
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201


*/s/ Michael L. Hood*
Michael L. Hood