IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAMOUN & NORMAN, LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.3:25-cv-423-N |
| | § | |
| GENERAL RADAR CORP., | § | |
| DMITRY TURBINER, JOHN DOE I, | § | |
| JOHN DOE II, | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to 28 U.S.C. section 1447(c) and the Court's January 7, 2026 Order [Dkt. No. 19], Plaintiff Shamoun & Norman, LLP ("*Plaintiff*") respectfully files this Reply to Defendants' Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Expenses, respectfully showing as follows.

I.
INTRODUCTION

Defendants do not dispute Plaintiff incurred significant time and expense owing to Defendants' untimely efforts to wrangle the State-Court Action from the 68th District Court in Dallas, Texas. To the contrary, Defendants readily concede Plaintiff reasonably and necessarily incurred, at a minimum, more than $32,000 in attorneys' fees to secure remand of the State-Court Action that this Court determined was improperly and unjustifiably removed.

What Defendants do take issue with is: (1) the Court's rejection of their assertion that the "excusable neglect" doctrine relieves them of the consequences of their failure to remove the State-

Court Action within the removal statute's mandatory 30-day removal deadline, and (2) Shamoun & Norman, LLP's ("*SN*") evidence of the amount of fees Plaintiff reasonably incurred to remedy Defendants' patently untimely removal notice.  Neither complaint has merit.

## II.
### ARGUMENT & AUTHORITIES

**A.  The Court Correctly Rejected Defendants' Invocation of the Excusable Neglect Doctrine to Avoid the Consequences of their Improper Removal of the Lawsuit from State Court.**

Defendants do not challenge the Court's determination that the excusable neglect standard does not apply in this case.  [*Compare* Dkt. No. 19, Court Order at 3, *with* Dkt. No.21, Defs' Resp. at 9-10].  Nor do Defendants disagree with the Court's conclusion that, even if that standard were applicable, Defendants' failure to comply with the removal statute's 30-day deadline cannot be excused.  [*Compare* Dkt. No. 19, Court Order at 4, *with* Dkt. No. 21, Defs' Resp. at 10].  Instead, missing the applicable standard altogether, Defendants suggest they "were not <u>objectively</u> unreasonable in believing removal was proper" because their prior counsel <u>subjectively</u> "miscalculate[ed]" the removal deadline owing to the fact "service occurred on a weekend and two holidays fell during the [removal] period[.]"  [Dkt. No. 21, Defs' Resp. at 10].

As Defendants' own referenced authority makes plain, however, "[a] defendant's subjective good faith belief that removal was proper is insufficient" to establish objectively reasonable counsel would have made the same so-called calendaring error.[1] *Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 298 (5th Cir. 2017) (cited in Dkt. No. 21, Defs' Resp. at 10); *see also Martinez v. Allstate Tex. Lloyd's*, No. 3:16-CV-2375-L-BK, 2017 WL 3309096, at *4 (N.D. Tex. Jan. 11, 2017), *report and recommendation adopted*, 2017 WL 329347 (N.D. Tex. Feb.

---

[1] Even if Defendants' prior counsel's subjective belief that they properly calendared the removal deadline was reasonable, Defendants submitted no evidence whatsoever indicating how their prior counsel calculated the removal deadline and the actual date, if any, they determined Defendants' removal notice was due.

8, 2017) ("It is not necessary to show bad faith or other ulterior motive of the defendant to recoup attorney's fees under section 1447(c).") (cited in Dkt. No. 21, Defs' Resp. at 10).

Defendants' excusable neglect argument fails for the further reason that it takes no account of long-settled Supreme Court precedent: (1) imposing on <u>both</u> Defendants and their counsel the duty to exercise diligence in complying with the statutory removal deadline, and (2) applying well-established agency principles imputing to clients notice of all facts known to their counsel. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993). In other words, clients have an independent duty to protect their own rights and will "be held accountable for the acts and omissions of their attorneys." *Id.* at 396.

Here, Defendants do not contend their prior counsel was unaware of the removal deadline. To the contrary, Defendants acknowledge their prior counsel knew about the 30-day deadline but simply "miscalculate[ed]" when that deadline expired. [Dkt. No. 21, Defs' Resp. at 2 & 9-10]. That explanation strains credulity given the fact Defendants never sought leave to file their removal notice out of time based on the date their counsel actually calendared the deadline to remove the State-Court Action to federal court.[2] Indeed, even 2 months after filing their original removal notice—when, on April 21, 2025, the Court ordered Defendants to file an Amended Notice of Removal—Defendants insisted removal was timely. [Dkt. No. 9, Defs' First Amend. Notice of Removal at 2 ¶ 3].

Moreover, and more importantly, Defendants expressly admit they made no effort to keep apprised of what was happening in this case. [Dkt. No. 13, Defs' Resp. in Opposition to Pl's Motion to Remand Ex. at 1 (Declaration of Dmitry Turbiner) ("At all relevant times, I was not

---

[2] Defendants' contention that their counsel's failure timely to file their Notice of Removal resulted from being served on a Saturday and the observation of 2 intervening holidays also rings hollow given the fact that the District Court's observation of 2 holidays during the removal period <u>extended</u>, not shortened, the 30-day removal deadline, thereby giving Defendants extra time to account for any calendaring errors.

aware of the specific deadline for filing a Notice of Removal in this matter. I relied entirely on Gordon Rees to advise me of all applicable deadlines and to take the necessary steps to ensure compliance with all procedural requirements.")].

Under these circumstances, the Court correctly held, and should affirm its ruling, that the excusable neglect doctrine is inapplicable to this case and, even if it were, Defendants' mistake does not constitute "excusable neglect." [Dkt. No. 19, Court Order at 3].

**B.      Plaintiff's Evidence Is More than Sufficient to Support the Requested Amount of Attorneys' Fees It Incurred to Secure Remand of the Lawsuit to State Court.**

The applicable lodestar method for determining the reasonable amount of attorneys' fees Plaintiff is entitled to recover from Defendants begins with a 2-step process: (1) determining the reasonable hourly rate for the attorneys who worked on the removal/remand portion of the case, and (2) determining the number of hours they reasonably expended on the litigation. *See Rouse*, 181 F. Supp. 3d at 383. After that, informed by the 12 *Johnson* factors, the Court may adjust up or down the amount of attorneys' yielded by multiplying the attorneys' rates by the number of hours reasonable worked. *Id.* at 384.

Here, Defendants broadly attack the reasonableness of Plaintiff's attorneys' fees on 2 principle grounds: (1) SN's alleged practice of block billing by quarterly-hour time increments is *a fortiori* improper and, thus, no evidence of Plaintiff's reasonable and necessary attorneys' fees, and (2) SN's failure to perform an entry-by-entry analysis of what fees it discounted and why that does not support a determination SN exercised billing judgment in calculating the amount of its reimbursable fees. [Dkt. No. 21, Defs' Resp. at 5-7]. Defendants are wrong on both accounts.

*1.     Plaintiff's Attorneys' Billing Rates are Prima Facie Reasonable Because Defendants Do Not Challenge Them.*

There is no one right way to establish the reasonable amount of attorneys' fees Plaintiff reasonably incurred because Defendants improperly removed the State-Court Action to this Court.

The only requirement is that Plaintiff provide the Court with "enough information for [it] to discern which fees are reasonabl[e] [] and which are not." *Rouse*, 181 F. Supp. 3d at 387-88; *see also Franciscan Alliance, Inc.*, 681 F. Supp. 3d at 637-38 ("Contemporaneous billing records are an acceptable, and indeed preferred, method of determining the hours reasonably expended.").

To determine reasonableness of an attorneys' rates, "a court considers the attorneys' regular rates as well as prevailing rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). It is well established in this Circuit that,

> [w]hen an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable.

*Id.*

Here, Plaintiff's evidence establishes—and Defendants do not dispute—the usual billing rate of the two primary timekeepers'—Brian K. Norman and David Jefrie Mizgala—is, respectively, $1,000 per hour and $575 per hour. [Dkt. No. 20, Pl's Motion for Fees Ex. A at 3 ¶ 5]. Plaintiff's evidence further establishes—and again Defendants do not dispute—those rates are significantly lower than local and national rates for attorneys' with similar experience. *Id.* The evidence thus demonstrates those attorneys' billing rates are reasonable. *Id.*

### 2. *Defendants' Evidence Accurately and Adequately Reflect the Work Plaintiff's Counsel Actually Performed on this Case.*

Defendants attack the quality of Plaintiff's attorneys' fees evidence on the ground SN's attorneys "block billed for [their] services in quarter-hour increments." [Dkt. No. 21, Defs' Resp. at 5]. More particularly, Defendants advance the logical fallacy that (1) some courts in this Circuit have found attorneys' fees billed in quarter-hour increments may "fail to adequately evidence the time actually incurred," (2) SN billed its attorneys' time in quarter-hour increments, therefore (3)

this Court should find SN's billing statements are no evidence of the time SN's attorneys actually expended to obtain remand of this improperly removed case.  [Dkt. No. 21, Defs' Resp. at 5].

As an initial matter, Defendants' relied-upon cases do not blanketly castigate the practice of billing in quarter-hour increments.  To the contrary, as this Court previously explained, "billing in quarter-hour increments is not *per se* unreasonable." *ART Midwest, Inc. v. Clapper*, Civil Action No. 3:99-CV-2355-N, 2014 WL 12717196, at *4 (N.D. Tex. Nov. 14, 2014) (Godbey, J.) (cited in Defs' Resp. at 5); *Rouse*, 181 F. Supp. 3d at 386 n.4 ("Because of *the facts and circumstances of this case*—specifically the apparent lack of billing judgment—the Court finds the quarter hour (0.25) billing increments suspect.") (emphasis added) (cited in Defs' Resp. at 5-6).  Likewise with block billing.  *See Franciscan Alliance, Inc. v. Becerra*, 681 F. Supp. 3d 631, 642 (N.D. Tex. 2023) (O'Connor, J.) ("[M]ost courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate.") (cited in Defs' Resp. at 6).

The issue before this Court, therefore, is not whether SN's attorneys block billed in quarter-hour increments, but—as in all cases—whether Plaintiff's evidence provides the Court with enough information to discern which fees are reasonable and which are not. *Rouse v. Target Corp.*, 181 F. Supp. 3d at 387-88.  It does.  To be sure, that standard does "not require[] [counsel] to record in great detail how each minute of his time was expended;" all he must do is "identify the general subject matter of his time expenditures." *Franciscan Alliance, Inc.*, 681 F. Supp. 3d at 642.

Here, an examination of Defendants' Response reveals their chief complaint is not that they were unable to discern the reasonableness of any time entry, but that they disagree with the reasonableness of the amount of time SN spent performing the task(s) specified therein. [*See generally* Dkt. No. 21, Defs' Resp. at 4-5].  Defendants similarly complain that, as to its exercise

of billing judgment, because "Plaintiff offers no explanation of which time entries … are being discounted … Defendants are left with no way to determine which billing entries Plaintiff contends are not being sought, and therefore, no meaningful way to respond to Plaintiff's [] assertions it exercised billing judgment." [Dkt. No. 21, Defs' Resp. at 7].

But Defendants' claimed befuddlement is belied by the facts (1) Defendants identify numerous specific tasks that they deem are excessive, unreasonable, and unnecessary, and (2) Plaintiff's proffered evidence expressly shows, in its exercise of business judgment, SN voluntarily reduced the amount of fees Plaintiff incurred by $18,750.00, or 22.5 percent, to account for any unproductive, excessive, or redundant fees. [Dkt. No. 20, Defs' Motion for Fees at 4-5 ¶ 3].

SN's voluntary reduction thus militates against, if not eliminates entirely, Defendants complaints about their claimed inability to discern the particular time entries Plaintiff is discounting.[3] [Dkt. No. 20, Defs' Resp. at 7]. Moreover, Plaintiff's cite no authority that only an entry-by-entry analysis is sufficient to establish SN exercised business judgment, and that a percentage fee reduction—the same remedy the Court would apply if it determines Plaintiff's evidence of billing judgment is insufficient—is inadequate or improper.

### III.
### CONCLUSION & PRAYER

For the foregoing reasons, and those stated in Plaintiff's Motion for Attorneys' Fees and Expenses, Plaintiff respectfully requests the Court (1) deny Defendants' request to reconsider the Court award of attorneys' fees to Plaintiff and (2) award Plaintiff its reasonable and necessary attorneys' fees in the amount of $65,456.25, as well as its reasonable and necessary expenses in

---

[3] This applies with equal force to Defendants' objections to the de minimis amount of fees—2 hours totaling $1,100—attributable to timekeepers other than Mr. Norman and Mr. Mizgala. [Dkt. No. 21, Defs' Resp. at 7-8].

the amount of $5,042.56, for a total amount of fees and expenses of $70,498.81.  Plaintiff further respectfully request the Court grant Plaintiff all additional relief to which it is entitled.

        Respectfully submitted,

        **SHAMOUN & NORMAN, LLP**

        By:    */s/ C. Gregory Norman*
        **C. Gregory Shamoun**
        State Bar No. 18089650
        Email: g@snlegal.com
        **Brian K. Norman**
        State Bar No. 00797161
        Email: bkn@snlegal.com
        **Michael L. Hood**
        State Bar No. 09943435
        Email: mhood@snlegal.com
        **David Jefrie Mizgala**
        **State Bar No. 24031594**
        Email: djm@snlegal.com
        **SHAMOUN & NORMAN, LLP**
        1800 Valley View Lane, Suite 200
        Farmers Branch, Texas 75234
        Telephone: (214) 987-1745
        Facsimile: (214) 521-9033

        **ATTORNEYS FOR PLAINTIFF**
        **SHAMOUN & NORMAN, LLP**

## CERTIFICATE OF SERVICE

I certify on January 28, 2026, I served a true and correct copy of Plaintiff's Reply to Defendants' Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Expenses on all counsel of record.

        */s/ David J. Mizgala*
        David Jefrie Mizgala

490108v1