IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAMOUN & NORMAN, LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.3:25-cv-423-N |
| | § | |
| GENERAL RADAR CORP., | § | |
| DMITRY TURBINER, JOHN DOE I, | § | |
| JOHN DOE II, | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF'S MOTION TO STRIKE, AND RESPONSE TO, DEFENDANTS' LATE-FILED SUPPLEMENTAL
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to 28 U.S.C. section 1447(c) and the Court's January 7, 2026 Order [Dkt. No. 19], Plaintiff Shamoun & Norman, LLP ("***Plaintiff***") respectfully files this Motion to Strike, and Response to, Defendants' Late-Filed Supplemental Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Expenses (Plaintiff's "Motion to Strike"), respectfully showing as follows.

## I.
### INTRODUCTION

Without leave of the Court, and with no explanation why they are just now raising novel issues and arguments they should have (but failed to) include in their prior briefing,[1] Defendants filed a Supplemental Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Expenses (Defendants' "New Briefing"). [Dkt. No. 22]. Besides being untimely, Defendants'

---

[1] The Court's January 7, 2026 Order unequivocally establishes specific deadlines by which the Parties must file their respective attorneys' fees briefs; Defendants' deadline to oppose Plaintiff's attorneys' fees motion was January 25, 2026. [Dkt. No. 19, Court Order at 4].

New Briefing is flat wrong on the law. For these reasons, and those set forth below, the Court should strike or otherwise disregard Defendants' New Briefing.

**II.**
**MOTION TO STRIKE & RESPONSE**

A.    **The Court Should Strike Defendants' New Briefing Because It Is Untimely and Raises Novel Arguments and Authority It Should Have—But Failed to—Include in their Prior Briefing.**

Precedent in this Circuit makes plain that, because court-ordered deadlines are not discretionary, a party should not be relieved of its failure to comply with such deadlines absent an adequate excuse—*i.e.*, one establishing its diligent in pursing and protecting its rights. *See, e.g.*, *Malhotra v. State Farm Lloyds*, No. SA-23-CV-780-JKP (HJB), 2024 WL 4101931, at *2 (W.D. Tex. July 29, 2024) (recognizing "merely proffering an explanation is not enough ... [t]he explanation has to be "adequate," and an "adequate" explanation is something more than "inadvertence") (internal quotations and citations omitted).

Here, Defendants offer no excuse—let alone an adequate one—establishing why, in the exercise of due diligence, they did not (and could not) raise their newly asserted "fees actually incurred" argument in their earlier-filed Response opposing Plaintiff's request for attorneys' fees and costs. [*See generally* Dkt. No. 21, Defs' Response]. Accordingly, under such circumstances, the Court should strike, or otherwise disregard, Defendants' New Briefing because (1) it is untimely, and (2) Defendants' waived the novel arguments therein.

B.    **Defendants Newly Asserted "Fees Actually Incurred" Argument is Wrong-Headed, and Contrary to the Authority they It Ignores and Unsupported By that Upon Which They Rely.**

Defendants' New Briefing asserts settled Supreme Court and Fifth Circuit precedent evince a bright-line rule, applicable in all attorneys' fees cases, that any party seeking to recover attorneys' fees must "demonstrate that the attorneys' fees it seeks were 'actually 'incurred'"—*i.e.*, the party

must "incur[] an obligation to pay fees to counsel distinct from itself."  [Dkt. No. 22, Defs' New Briefing at 1-2 (citing *Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991); *Gahagan v. U.S.  Citizenship & Immigr. Servs.*, 911 F.3d 298 (5th Cir. 218))].  Neither case compels Defendants' expansive, singular, view of federal fee-shifting statutes.

> **1.**  ***Courts Specifically Considering the Removal Statute's Text, Legislative History, and Underlying Public Policy Flatly Reject Defendants' "Actually Incurred" Argument.***

In *Cleanup North Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, plaintiffs, who were represented by *pro bono* counsel, moved to recover attorneys' fees against defendants that removed the case to federal court even though "the inappropriateness of a federal forum was readily apparent from the face of the complaint[.]"  373 F. Supp. 2d 398, 402 (N.D.N.Y. 2019). Defendants opposed plaintiffs' motion, "argu[ing] that § 1447(c) permits only 'actual expenses, including attorney fees, incurred as a result of removal,' and, because plaintiff are represented by *pro bono* counsel," they did not "actually incur any obligation to pay fees, therefore, no fees should be awarded."  *Id.* at 401-02.

Rejecting defendants' argument, the court looked to Congress' intent in acting the statute— deterring improper removals—and found defendants' argument was not compelled by the statutory language, and would severely undermine the statute's salient purpose.  *Id.* at 402.  Additionally, reasoned the court, "[d]efendants' reading of the statute would encourage unreasonable removal by defendants in cases [where plaintiffs are represented] on a *pro bono* basis."  *Id.*  Accordingly, the court held plaintiffs could recover their attorneys' fees, notwithstanding they were represented by *pro bono* counsel.

In *Gotro v. R&B Realty Group*, the Ninth Circuit considered "whether a district court has the discretion to award attorneys' fees to a contingent fee litigant under 28 U.S.C. § 1447(c)."  69 F.3d 1485, 1487 (9th Cir. 1995).  There, as here, the "defendants maintain[ed] that the[] statutory

language precludes a district court from awarding attorneys' fees to a litigants who has not actually incurred an obligation to pay those fees." *Id.*

Tracing the removal statute's legislative history, the court noted Congress' 1988 amendments to the statute added the "attorney fees incurred" language. *Id.* Before then, observed the court: (1) a finding of bad faith was required to award attorneys' fees under section 1447(c), and (2) section 1446(d) required a defendant to post a bond to cover payment of "all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or improperly removed." *Id.* at 1488. By amending the statue, explained the court, Congress may have (1) "intended 'actual expenses incurred' to be distinguished from a punitive award which was associated with the formerly required bad faith finding for an award of attorneys' fees" and (2) "chosen the words 'actual expenses incurred' to be distinguished from the former requirement of a bond upon removal." *Id.* at 407-408. Such purposes, reasoned the court, left district courts with sufficient discretion to award plaintiffs' attorneys' fees, notwithstanding the fact they were represented by counsel on a contingency fee basis. *Id.*

Because (1) there is no basis to distinguish this case from *Brooklyn Transfer LLC* and *Groto*, and (2) Defendants' argued-for construction of section 1447(c) would subvert Congress' purpose in enacting the statute, the Court should follow those courts' reasoning and find Plaintiff is entitled to recover its reasonable attorneys' fees from Defendants.

    **2.**    ***Defendants Reliance on* Kay v. Ehrler *is Misplaced Because the Supreme Court's Holding is Limited to the Fee-Shifting Provision of the Civil Rights Attorney's Fees Award Act of 1976; It Does Not Establish a Bright-Line Rule Applicable to All Statutorily Authorized Attorneys'-Fee-Shifting Cases.***

In *Kay v. Ehrler*, the Supreme Court considered only "whether an attorney who represents himself in a successful civil rights action may be awarded 'a reasonable attorney's fee as part of the costs' under 42 U.S.C. § 1988"—the "Civil Rights Attorney's Fees Awards Act of 1976." 499

U.S. 432, 433.  Before resolving that question, the Court looked to the legislative history to discern Congress' intent in enacting the statute.  *Id.* at 435-36.  Of key importance to the Court was the legislature's recognition that

> in many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer.  If private citizens are to be able to assert their civil rights, ... then citizens must have the opportunity to recover what it costs them to vindicate these rights in court … [and b]ecause a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts.  In authorizing an award of reasonable attorney's fees, [this bill] is designed to give such persons effective access to the judicial process where their grievances can be resolved according to law.

*Id.* 436 n.8.

In light of these considerations, the Court emphasized Congress' "specific purpose [in enacting section 1988] was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their [civil] rights." *Id.* at 437.  And, to effectuate that statutory purpose, explained the Court, it is better for courts to "treat[] a lawyer who represents himself … like other *pro se* litigants [rather than] a client who has had the benefit of the advice and advocacy of an independent attorney." *Id.* at 435.

Significantly, the Court rejected the self-represented attorney/*pro se*-litigant analogy in cases involving organizations that represent themselves:

> [A]n organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono,* and thus, there is always an attorney-client relationship.

*Id.* at 436 n.7.  Accordingly, Defendants' out-of-context reliance on *Kay*'s language regarding the necessity of "an attorney-client relationship as the predicate for an award <u>under § 1988</u>" is

misplaced in this case because Plaintiff is unquestionably an organization.[2]  *Id.* at 436 (emphasis added).

> ### 3.    Fifth Circuit Precedent Expressly Rejects Defendants' Unyielding "Fees Actually Incurred" Argument in Favor of Legislative-Intent and Public-Policy Considerations.

Defendants' only other authority for their unyielding "fees actually incurred" argument is *Gahagan v. U.S. Citizenship & Immigration Services*, 911 F.3d 2980 (5th Cir. 2018) (construing FOIA's attorneys'-fee-shifting provision).   [Dkt. No. 22, New Briefing at 2).   There, "[t]he question presented [wa]s whether attorneys appearing *pro se* can recover fees under the Freedom of Information Act[.]"  *Gahagan*, 911 F.3d at 300.  FOIA section 552(a)(4)(E) "authorizes courts 'to assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case … in which the complainant has substantially prevailed.'"  *Id.* (quoting 5 U.S.C. § 552(a)(4)(E)).

Looking to that provision's "reasonably incurred" language, the Fifth Circuit Court noted "[t]he 'general rule' that fees are 'incurred' when the litigant has a legal obligation to pay them." *Id.* at 305 (emphasis added) (citing *United States v. Claro*, 579 F.3d 452, 464 (5th Cir. 2009)). Without explication or analysis of the "general rule" and the numerous exceptions thereto recognized by the *Claro* Court, the *Gahagan* Court summarily proclaimed that, because Gahagan, a *pro se* attorney, "had no legal obligation to pay himself, he did not 'incur' any attorneys' fees under the general rule." *Id.* (emphasis added).

---

[2] Defendants' suggestion that *Kay* establishes a bright-line rule applicable "under [any] fee-shifting statute" is misguided and wrongheaded for the further reason that the Court expressly limited its decision to attorneys' fees awarded "under § 1988."  *But see* Defs' New Briefing at 1 ("In *Kay v. Ehrler*, the Supreme Court held that a lawyer who represents himself is not entitled to recover attorneys' fees under a federal fee-shifting statute because such statute contemplates an attorney-client relationship …..") (over expansively citing *Kay*, 499 U.S. at 435-38)).

But *Claro* (like *Kay*) makes plain that congressionally enacted fee-shifting statutes must be construed, not rotely, but in context with their legislative purpose. *See generally Claro*, 579 F.3d at 456-57. In determining what "fees and other expenses" John Claro could recover from the United States because it "vexatious[ly], frivolous[ly], or in bad faith" subjected him to criminal prosecution, the court looked to the Equal Access to Justice's ("EAJA") statutory fee-shifting provision's text <u>and</u> its legislative history. *Id.* at 464 (emphasis in orig.). Noting the statute expressly requires courts to "award to a prevailing party … fees and other expenses … *incurred* by that party[,]" but does not define term "incurred," the court turned to (1) the purpose Congress intended the statute to serve and (2) cases "recogniz[ing] exceptional circumstances for which an award of attorney's fees in *not* contingent upon an obligation to pay counsel." *Id.* at 464-65 (emphasis added).

Based on those considerations, the court recognized

> that attorney's fees have been granted under the EAJA in the following broad circumstances: (1) under the general rule, in which the litigants actually incurs the legal obligation to pay the fees; (2) in situations in which an indigent litigant is represented *pro bono*; or (3) in a limited amount of situations in which <u>policy dictates allowing fees to further the [statute's] goals</u>[.]

*Id.* at 466 (emphasis added). This case falls within the third exception. Accordingly, for the above-stated reasons, Plaintiff is entitled to recover its reasonable attorneys' fees and costs from Defendants.

## III.
### CONCLUSION & PRAYER

Defendants' untimely asserted claim that the removal statute's "actually incurred" language requires a plaintiff seeking to recover its attorneys' fees under section 1447(c) to "demonstrate that the attorneys' fees it seeks were 'actually incurred'"—*i.e.*, the plaintiff must "incur[] an obligation to pay fees to counsel distinct from itself—is wrongheaded and misguided

for the above-stated reasons, and those stated in Plaintiff's Motion for Attorneys' Fees and Expenses and Plaintiff's Reply to Defendants' Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Expenses.

Plaintiff, therefore, respectfully requests the Court (1) strike Defendants' New Briefing, and (2) award Plaintiff its reasonable and necessary attorneys' fees in the amount of $65,456.25, as well as its reasonable and necessary expenses in the amount of $5,042.56, for a total amount of fees and expenses of $70,498.81. Plaintiff further respectfully requests the Court grant Plaintiff all additional relief to which it is entitled.

Respectfully submitted,

By: */s/ C. Gregory Norman*
**C. Gregory Shamoun**
State Bar No. 18089650
Email: g@snlegal.com
**Brian K. Norman**
State Bar No. 00797161
Email: bkn@snlegal.com
**Michael L. Hood**
State Bar No. 09943435
Email: mhood@snlegal.com
**David Jefrie Mizgala**
**State Bar No. 24031594**
Email: djm@snlegal.com
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, Texas 75234
Telephone: (214) 987-1745
Facsimile: (214) 521-9033

**ATTORNEYS FOR PLAINTIFF**
**SHAMOUN & NORMAN, LLP**

## <u>CERTIFICATE OF SERVICE</u>

I certify on January 30, 2026, I served a true and correct copy of Plaintiff's Motion to Strike, and Response to, Defendants' Late-Filed Supplemental Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Expenses on all counsel of record.


*/s/ David J. Mizgala*
David Jefrie Mizgala


490143v1